HILL'S ADMINISTRATORS *vs.* McCARTER and others.

1. The rule in equity is well established, that where mortgaged premises are sold in separate parcels successively to different purchasers, with covenants against encumbrances, the parcels are liable to sale to satisfy the mortgage, in the inverse order of their sale. But the rule will not be applied in any case where its application would work injustice.

2. A conveyance of part of mortgaged premises, expressly subject to existing mortgages, is an assurance to the subsequent purchaser of the other parts, that the property will be subject to its due proportion of the burden of such mortgages.

3. Where part of mortgaged premises is conveyed subject to mortgages thereon, and the rest of the property is sold and conveyed in fee in parcels to other persons, the part first conveyed is bound to pay its due proportion of the mortgages, according to the comparative value of the respective portions at the time of its conveyance.

4. A purchaser of part of mortgaged premises is not entitled to the benefit of a release by a prior mortgagee from the lien of his mortgage, of another part of the premises, when the mortgagee had not actual notice of the conveyance at the time of making the release.

On bill to foreclose. On final hearing on pleadings and proofs.

*Mr. Thomas Kays,* for complainants.

*Mr. W. S. Whitehead,* for Albert P. Condit, surviving trustee.

*Mr. R. Hamilton,* for McCarter's assignee in bankruptcy, and others.

THE CHANCELLOR.

The question presented arises between the purchasers of certain land containing sixty-nine and fifty-two hundredths acres, which, on the 5th of June, 1865, was owned by John McCarter, as to the manner in which the burden of two mortgages which are on the property, and were given by him, shall be borne. On one of these mortgages there was at that date

due of principal, $2500, besides interest. It was originally given to secure $4000, but $1500 of the amount had been paid. This mortgage was given to Frances M. Anderson, and was by her assigned to the complainants' intestate. The other mortgage was for $1000 and interest, and was given to Ross C. Browning. On the 5th of June, 1865, McCarter sold part (forty-nine and thirty-six hundredths acres,) of the premises to William M. Babbitt, for the consideration of $8255, and conveyed it to him by deed in fee simple, with the usual full covenants, including warranty general. Following the description of the premises, is this statement: "These lots are sold subject to one mortgage to Frances M. Anderson, of $2500, and the interest thereon after April 1st, 1865, and a mortgage given to Ross C. Browning, for $1000, interest from same time." McCarter subsequently, and on the 27th of June, 1865, sold and conveyed in fee simple to Emma Barrett, another part (seventeen and forty-two hundredths acres,) of the land, which was subject to the mortgage of $2500, and on the same day the complainants' intestate released that land from the lien of his mortgage. Subsequently, the rest of the property was sold and conveyed in fee, in parcels to other persons. No part of the purchase money of the sale to Babbitt was paid by him in cash, but at or about the time of the delivery of the deed from McCarter to him, he delivered to the latter an assignment, executed by himself and William M. Vermilye, of a mortgage made by Sardius Stewart and Farrand K. Stagg, to them, upon certain real estate in Wayne county, Pennsylvania, to secure the payment of $10,000 in installments, with interest. This assignment contained the following covenant, made by Babbitt and Vermilye: "And we do hereby covenant and agree to and with the said John McCarter, that there is now unpaid on the said bond and mortgage the sum of $10,000 of principal, and for the consideration aforesaid, ($10,000,) and as part of the agreement under which this assignment is made, we do hereby guarantee the payment of the said bond, and do bind ourselves, our heirs, executors and administrators, jointly and severally, firmly by these presents, to pay to the said John McCarter,

his executors, administrators or assigns, the said sum of money
unpaid on and secured by the said bond and mortgage."
This assignment is dated on the 2d of June, 1865. By an
instrument of writing, under seal, dated on the tenth of the
same month, executed by McCarter, and delivered to Babbitt,
the conveyance of the land by the former to the latter, and
the existence of the encumbrances of the mortgages thereon
were recited, and it was also recited that in payment of the
purchase money of the property, Babbitt had, with Vermilye,
assigned and set over to McCarter the Stewart and Stagg
bond and mortgage, and that after deducting from the amount
of that bond and mortgage the amount of the consideration
($8255) of the conveyance of the property sold and conveyed
by McCarter to Babbitt, there was a balance of $1745, for
which, and Babbitt's note to McCarter for $881, McCarter
had assigned to Babbitt a mortgage for $2424, principal and
interest, given to him by Richard Sherred, on other land.
The instrument thereupon declared that in order to effectually
secure Babbitt against loss or damage by reason of the two
mortgages on the property conveyed to him by McCarter,
being liens and encumbrances on that property, it was thereby
expressly understood and agreed by McCarter with Babbitt,
that so much of the interest money as might become due from
year to year on the Stewart and Stagg bond and mortgage,
and as might be necessary for the purpose, should be applied
to the payment of the interest money which might become
due on the two mortgages on the land conveyed to Babbitt by
McCarter, and that when the last payment should become
due on the Stewart and Stagg mortgage, so much thereof as
might be necessary for the purpose should be applied by
McCarter to pay off and discharge the mortgages on the land
conveyed by him to Babbitt.

On the 30th of December, 1865, McCarter, for the con-
sideration of $6500, assigned the Stewart and Stagg bond and
mortgage, and Babbitt and Vermilye's guaranty thereof, to
James A. Goodale, in trust to collect the money secured by
them, with the interest, as fast as the installments should fall

due, and to apply the first $6500 collected on account of the principal and the interest thereon, to Goodale's own use, and after receipt of the $6500 of principal, to take up, pay off and discharge, and cause to be canceled, the two mortgages on the property conveyed by McCarter to Babbitt; and until such payment, satisfaction and discharge, to pay to the holders of those mortgages the interest which should be received on the Stewart and Stagg bond and mortgage over and above the interest on the $6500, or such part thereof as should remain unpaid, as interest on those mortgages, semi-annually on the first days of January and July of each year, until they should be paid off and discharged; and it was thereby declared to be the intention of the parties to the instrument, to apply, out of the principal of the Stewart and Stagg mortgage, the last $3500 to the payment of the mortgages on the Babbitt property, and to apply the surplus of the interest collected on the Stewart and Stagg mortgage, after deducting the interest on the $6500, or so much thereof as might remain unpaid, to the payment, half yearly, of the interest on the mortgages on the Babbitt property. And this further trust was declared: In case the last mentioned mortgages should be collected by the holder or holders thereof, before the last $3500 should be collected on the Stewart and Stagg mortgage, to pay over to McCarter the $3500, or such part thereof as might not have been paid by Goodale under the provisions of that instrument, with the interest which might have been collected by him. McCarter guaranteed to Goodale the payment of the Stewart and Stagg mortgage, on condition that Goodale should, in case of any default of payment thereon, prosecute Babbitt and Vermilye on their guaranty. Default was made in the payment of the interest on the Stewart and Stagg mortgage, and Babbitt, on being called on to do so, paid the interest on the two mortgages on his property. In or about June, 1869, Goodale prosecuted Babbitt and Vermilye, in the name of McCarter, in the Supreme Court of this state, on their guaranty, and recovered judgment on the 8th of November following, for $7405.13 damages and costs. Both Babbitt and Ver-

milye were insolvent. On the 3d of June, 1870, the premises covered by the Stewart and Stagg mortgage were sold under judicial proceedings on that mortgage, at public sale, for $5000. On the 22d of September, 1865, Babbitt mortgaged to himself and Albert P. Condit, trustees under the will of Daniel Babbitt, deceased, the premises bought by him of Mc-Carter, with other premises, to secure the payment of $35,000, with interest. The premises so mortgaged by him were already encumbered by mortgages other than those on the part conveyed to Babbitt by McCarter, to the amount of $13,860, besides interest. Afterwards, and in 1869, William W. Shippen purchased the equity of redemption of the premises mortgaged to the trustees, at sheriff's sale, under an execution at law against Babbitt. The sheriff's deed to him is dated in August, 1869. By deed dated the 4th of April, 1870, he conveyed the equity of redemption to Babbitt and Condit, as trustees under the will of Daniel Babbitt, deceased, for the consideration, as expressed in the deed, of $1. William M. Babbitt is dead.

The surviving trustee under the will of Daniel Babbitt, deceased, insists that of the land covered by the complainants' mortgage, the parcels sold and conveyed by McCarter subsequently to the conveyance to Babbitt, should be first sold to pay that mortgage. On the other hand, those subsequent purchasers insist that the parcel conveyed to Babbitt should be first sold. The rule in equity is established, that where mortgaged premises are sold in separate parcels successively, to different purchasers, with covenants against encumbrances, the parcels are liable to sale, to satisfy the mortgage, in the inverse order of their sale. This, however, being a rule of equity, will not, of course, be applied in any case where its application would work injustice. The deed from McCarter to Babbitt contained, as before stated, the usual full covenants, including covenants against encumbrances and warranty general. But the property was conveyed expressly subject to the mortgages, and the interest thereon, from the 1st day of April, 1865. This was an assurance to the above-mentioned

·subsequent purchasers, that the property would be subject to its due proportion of the burden of the mortgage. *Hoy* v. *Bramhall*, 4 *C. E. Green* 74; *S. C., on appeal, Ib.* 563; *Stillman's Ex'rs* v. *Stillman*, 6 *C. E. Green* 126. The evidence shows that it was understood between Babbitt and Mc- ·Carter that the former was to pay off the mortgages. He ·did not pay in cash any part of the purchase money. He transferred to McCarter the Stewart and Stagg mortgage in payment of the purchase money, stipulating that for his pro- ·tection against the lien of the mortgages on the property con- ·veyed to him, those mortgages should be paid off by McCar- ter, out of the last payment of principal, which was $6000, and did not fall due until about five years thereafter—June 1st, 1870; and that so much of the interest on the Stewart ·and Stagg mortgage as might be necessary for the purpose, should, from time to time, be applied to the payment of the interest on the mortgages on the property conveyed by Mc- Carter to Babbitt. Babbitt and Vermilye guaranteed the payment of the Stewart and Stagg mortgage. It proved to be worth only $5000, and the guaranty was utterly worthless.· The declaratory instrument executed by McCarter, on the ·delivery of the assignment to him, states, indeed, that Babbitt, in payment of the purchase money of the conveyance, had, with Vermilye, made the assignment, but McCarter evidently ·did not agree to accept the Stewart and Stagg mortgage as absolute payment of the purchase money, for he required that Babbitt and Vermilye, as to whose solvency the former gave him strong and satisfactory assurance, should guarantee its payment to him. As between Babbitt and McCarter, the purchase money, so far as it represents the amount due on the mortgage, has never been paid. But, whatever might be the equities as between them, the question is not to be dealt with as if it were a question of vendor's lien for unpaid pur- ·chase money between Babbitt and McCarter. The question is a question of equities between successive purchasers of parcels of mortgaged premises covered by one mortgage. The ·declaration in the deed, that the conveyance was made subject

Mason's Executors *v.* Trustees of M. E. Church at Tuckerton.

to the mortgages, was notice that the property was not exempt from the payment of the mortgages, but was, with the rest of the mortgaged premises, subject to them, and was to bear its share of the burden of those encumbrances. The property, therefore, is still in the hands of the trustees, under the will of Daniel Babbitt, subject, with the rest of the mortgaged property, to the payment of the mortgages, and is bound to pay its due proportion according to the comparative value of the respective portions at the time of the conveyance by McCarter to Babbitt. *Stillman's Ex'rs* v. *Stillman,* 6 *C. E. Green* 126, 129, 130.

The judgment recovered by Goodale in the name of McCarter is of no value. Babbitt died wholly insolvent, and Vermilye is insolvent. As to $3500 of the amount of it, and whatever other sum is included in it for interest which was payable on the Stewart and Stagg mortgage, and which, if collected, would, under the agreement, have been applicable to the interest on the mortgages on the property conveyed to Babbitt by McCarter, equity will give such relief, on due application, as may be just in the premises.

There is no evidence that the complainants' intestate had, at the time when the release to Emma Barrett was delivered, any actual notice of the conveyance to Babbitt. The trustees are not therefore entitled to any reduction on account of that release. *Blair* v. *Ward,* 2 *Stockt.* 126 ; *Van Orden* v. *Johnson,* 1 *McCarter* 376 ; *Hoy* v. *Bramhall, supra; Ward's Ex'rs* v. *Hague,* 10 *C. E. Green* 397.